FILED IN CHAMBERS
U.S.D.C ATLANTA

Date: Aug 25 2023

KEVIN P. WEIMER, Clerk

By: s/Kari Butler
Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| v. | CRIMINAL ACTION FILE NO. |
| BRYAN WHITE, | 4:22-CR-00017-WMR-WEJ-5 |
| Defendant. | |

**NON-FINAL REPORT AND RECOMMENDATION
RE: DEFENDANT WHITE'S MOTION TO SUPPRESS WIRE AND
ELECTRONIC COMMUNICATIONS EVIDENCE [197]**

This matter is before the Court on defendant Bryan White's Motion to Suppress Wire and Electronic Communications Evidence [197]. For the reasons stated below, the undersigned **RECOMMENDS** that said Motion be **DENIED**.

## I. BACKGROUND

Defendant Bryan White is charged in an Indictment [15] with conspiring to possess with intent to distribute methamphetamine and fentanyl in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A). The alleged conspiracy spanned from at least January 1, 2017 until April 26, 2022. (Id.)

The Government shows that much of the evidence in the case derives from intercepted wire and electronic communications over co-defendant Frank Miller's

cell phone, undercover drug purchases, surveillance conducted by agents, and the seizure of drugs on multiple occasions. The aforementioned interceptions were made pursuant to three Orders Authorizing Interception of Wire and Electronic Communications issued in the following cases:

(1)   4:21-MJ-29, in an Order signed on June 22, 2021, by the Honorable Leigh Martin May, United States District Judge (re: Target Telephone 1);

(2)   4:21-MJ-40, in an Order signed on September 14, 2021, by the Honorable Michael L. Brown, United State District Judge (re: Target Telephones 2, 3, and 4); and

(3)   4:22-MJ-19, in and Order signed on March 15, 2022, by the Honorable Mark H. Cohen, United States District Judge (re: Target Telephones 5, 6, and 7).

Jeremy Gazerro, an Agent with the Bartow-Cartersville Drug Task Force and a Task Force Officer with the Federal Bureau of Investigation, signed the Affidavits supporting the Applications for Orders submitted in all three cases.[1]

Defendant seeks to suppress evidence derived from the Title III wiretaps. Mr. White asserts that (1) he has standing to contest the claimed illegalities in the

---

[1] The Assistant United States Attorney provided the undersigned with copies of materials relevant to those Applications and Orders.

wiretaps at issue; (2) the wiretap applications lacked probable cause; (3) the Government failed to demonstrate necessity; and (4) the applications for extensions of the interception orders are tainted in the same manner as the initial application.[2]

The Government agrees that the defendant has standing to challenge the Title III Orders. (Gov't Resp. [225] 2.) However, the Government argues that defendant's Motion should be denied because: (1) probable cause supports the wiretap applications; (2) the wiretap applications presented facts showing their necessity, but even if necessity was lacking, the agents relied on the wiretap authorization orders pursuant to the "good faith" exception to the exclusionary rule outlined in United States v. Leon, 468 U.S. 897 (1984); and (3) defendant's arguments about wiretap extensions are inapposite because no extensions were sought in this investigation. (Gov't Resp. [225] 3-13.)

---

[2] Defendant also argues that calls and text messages which do involve him are irrelevant and should be excluded under Federal Rules of Evidence 401 and 403. (Def.'s Mot. [197] at 1-2.) Defendant makes this argument in the introduction to his Motion and never discusses the specific pieces of evidence to which he objects. Thus, the undersigned has no basis upon which to make a recommendation. In any event, this is an evidentiary issue left to the sound discretion of the presiding District Judge. If this case goes to trial, defendant can make a particularized motion in limine or raise objections as the Government seeks to introduce evidence he claims is inadmissible.

## II.    ANALYSIS

### A.    Standards Governing Wiretaps

"Title III of The Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. §§ 2510-2520, sets forth numerous requirements the government must meet before electronic surveillance (wiretaps) may be authorized." United States v. Flores, No. 1:05-CR-558-WSD-JFK, 2007 WL 2904109, at *21 (N.D. Ga. Sept. 27, 2007). For example, pursuant to 18 U.S.C. § 2518, a wiretap application must include:

> a full and complete statement of the facts and circumstances relied upon by the applicant . . . including details as to the particular offense . . ., a particular description of . . . the type of communications sought to be intercepted, the identity of the person . . . whose communications are to be intercepted, and a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous.

United States v. Gonzalez Perez, 283 F. App'x 716, 720 (11th Cir. 2008) (per curiam) (alterations in original) (internal marks omitted) (quoting 18 U.S.C. § 2518(1)(b), (c)).

Upon a proper application, a district judge may issue an ex parte order authorizing the interception of wire communications if:

> the judge finds probable cause to believe that an individual is committing or has committed a qualifying offense; that particular communications concerning that offense will be obtained through

4

such interception; and that the facilities from which, or the place where, the communications are to be intercepted are being used in connection with the offense, or are leased to, listed in the name of, or commonly used by such person.

United States v. Duarte-Rosales, No. 1:05-CR-197-6-TWT, 2008 WL 140665, at *2 (N.D. Ga. Jan. 11, 2008) (citing 18 U.S.C. § 2518(3)(a), (b), (d)); see also United States v. Robles, 283 F. App'x 726, 734-35 (11th Cir. 2008) (per curiam).

In reviewing challenges to Title III intercepts, the Court is mindful that "'wiretapping is particularly appropriate when the telephone is routinely relied on to conduct the criminal enterprise under investigation.'" United States v. Stokes, No. 96 CR 481 (SAS), 1996 WL 727400, at *5 (S.D.N.Y. Dec. 18, 1996) (quoting United States v. Steinberg, 525 F.2d 1126, 1130 (2d Cir. 1975)).  Moreover, "a wiretap order is presumed to be valid, and a defendant has the burden of overcoming this presumption and of proving that the wiretap order was unlawfully obtained." Flores, 2007 WL 2904109, at *22.

    B.    **Defendant's Arguments**

        1.    **Probable Cause**

Defendant contends that the affidavits used to obtain the interception orders here were lacking in probable cause. (Def.'s Mot. [197] 4-6.)  "Probable cause for a wiretap is the same probable cause required for a search warrant," Duarte-Rosales, 2008 WL 140665, at *2, and "[l]ike other types of warrants, probable cause must

5

exist at the time surveillance is authorized." Flores, 2007 WL 2904109, at *21 (citing United States v. Domme, 753 F.2d 950, 953 (11th Cir. 1985)). Probable cause exists "if the totality of the circumstances indicate that there is a fair probability that the sought for evidence will be obtained." United States v. Peterson, 627 F. Supp. 2d 1359, 1363 (M.D. Ga. 2008) (citing Illinois v. Gates, 462 U.S. 213, 239 (1983)). "The probable cause determination of the judge who issued the wiretap order will be upheld if the judge had a 'substantial basis' for concluding that probable cause existed." Id. (quoting United States v. Nixon, 918 F.2d 895, 900 (11th Cir. 1990)). The Government does not have a duty to establish probable cause as to the interception of calls involving each possible interceptee named in an application for a wiretap order; the Government need only establish that there was probable cause that the telephone in question is being used in an illegal operation. United States v. Mayfield, No. 2:16-CR-009-RWS-JCF, 2017 WL 9477736, at *8 (N.D. Ga. Feb. 28, 2017), R. & R. adopted, 2017 WL 4330369 (N.D. Ga. Sept. 29, 2017), aff'd sub nom., United States v. Stowers, 32 F.4th 1054 (11th Cir. 2022).

The Court notes that the defendant has only asserted that probable cause is lacking in the Affidavit supporting the Application in case 4:21-MJ-29. He does not mention any claimed deficiencies in the Affidavits supporting the Applications

in the other two cases (i.e., 4:21-MJ-40 and 4:22-MJ-19). Thus, any objections over whether probable cause existed to support the Affidavits for the other two Applications is waived.

But, even as to the one Affidavit he does challenge in case 4:21-MJ-29, the defendant only makes a boilerplate claim that it lacks probable cause. As the Government points out, the defendant ignores the extensive evidence in Agent Gazerro's 88-page Affidavit regarding information provided by cooperating defendants, cooperating sources, and sources of information, which was repeatedly corroborated in a variety of ways. (See WIRE-21 MJ29-000038-69.)[3] All of this

---

[3] For example, the Gazerro Affidavit discusses information provided by confidential source #2 regarding Clifford Alexander selling methamphetamine to CS #2; Alexander and Miller selling drugs together; and Alexander and Miller travelling to California to meet with Miller's source of supply. WIRE-21 MJ29-000056-58. After interviewing CS #2, agents then used CS #2 to set up a controlled purchase of ten ounces of methamphetamine from Alexander on May 19, 2021. (WIRE-21 MJ29-000061-63.) During that deal, Miller met with Alexander and CS #2 in a hotel parking lot and provided ten ounces of methamphetamine to CS #2, in a deal that was coordinated using Miller's cell phone. (Id.) Further, the Affidavit contains direct evidence of the defendant discussing the sale of drugs with Miller via text message. (WIRE-21 MJ29-000064-66.) Based on the messages obtained via historical text message search warrants and toll records, agents were able to establish that the defendant and Miller were engaged in a long-term drug relationship due to the content, frequency, and quantity of their communication. (Id.) This evidence, which did not rely on any confidential sources, provided further probable cause sufficient to support Judge May's finding of probable cause for wire and electronic interceptions over Target Telephone 1.

information provided a substantial basis for Judge May to conclude that probable cause existed.

Finally, even if probable cause was lacking in the Gazerro Affidavit submitted in Case 4:21-MJ-29 (and in the other two cases as well), Leon's good-faith exception applies.  "[T]he purpose of the exclusionary rule is to act as a deterrent to willful conduct that violates individual rights." United States v. Russell, No. 2:08CR121-WHA, 2008 WL 4649051, at *5 (M.D. Ala. Oct. 20, 2008) (internal marks and citation omitted).  Leon modified the exclusionary rule to permit the admission of evidence seized by police in reasonable, good-faith reliance on a search warrant that is later held to be unsupported by probable cause.  Leon, 468 U.S. at 920-22.  The Court reasoned that, where an officer's reliance on a warrant is objectively reasonable, no additional deterrent effect will be achieved by excluding the resulting evidence.  Id.[4]

---

[4] Leon determined that in four circumstances an officer would not have reasonable grounds, i.e., good faith, to believe that the warrant was properly issued: (1) where the issuing judge was misled by information that the affiant knew was false or would have known was false except for his reckless disregard for the truth; (2) where the issuing judge "wholly abandoned his judicial role in the manner condemned in Lo-Ji Sales, Inc. v. New York, 442 U.S. 319 (1979)"; (3) where the warrant was based on an affidavit "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable"; and (4) where a

Courts in this District routinely apply Leon to challenges that a wiretap application lacks probable cause. See United States v. Montemayor, No. 1:09-CR-00551-LMM-JFK, 2018 WL 4517634, at *17 (N.D. Ga. Aug. 27, 2018), R. & R. adopted, 2018 WL 4517459 (N.D. Ga. Sept. 20, 2018); United States v. Acosta, 807 F. Supp. 2d 1154, 1248 (N.D. Ga. 2011); and United States v. Sol Rey, No. 1:07-CR-145-WSD-LTW, 2008 WL 11384014, at *6 (N.D. Ga. Mar. 20, 2008), R. & R. adopted sub nom. United States v. Rey, No. 1:07-CR-145-WSD-LTW, 2008 WL 11383986 (N.D. Ga. May 15, 2008).

In the instant case, "the law enforcement officers did exactly what the law requires," in that applications and affidavits for the wiretaps at issue were submitted to United States District Judges, all of whom "then made a probable cause determination." Russell, 2008 WL 4649051, at *5. Given these circumstances, it was objectively reasonable for the agents or officers to conclude that probable cause for the warrants existed and for them to rely in good faith on the wiretap orders issued by those judges. Id.; see also United States v. Degaule, 797 F. Supp.

---

warrant is "so facially deficient—i.e., in failing to particularize the place to be searched or the things to be seized—that the executing officers cannot reasonably presume it to be valid." Leon, 468 U.S. at 923 (internal quotations and citations omitted). Defendant has submitted no evidence or argument suggesting that any of these circumstances exist here. No evidentiary hearing is needed.

9

2d 1332, 1363 n.26 (N.D. Ga. 2011) ("Even if the wiretaps were found to be invalid, suppression of the evidence seized is not warranted because the agents reasonably relied in good faith on the warrants."), R. & R. adopted, id. at 1344.

In sum, the Gazerro Affidavits provided probable cause for issuance of the interception orders here; but, even if probable cause were lacking, the evidence gathered under their auspices would still be admissible pursuant to Leon's good-faith exception to the exclusionary rule.

### 2. Necessity

Defendant contends that the wiretap applications here fail to meet the required standards of necessity, in that the Government has failed to show that traditional methods of investigation would not suffice. (Def.'s Mot. [197] 6-9.) "Pursuant to 18 U.S.C. § 2518, court-ordered electronic surveillance is prohibited unless the government demonstrates the necessity of such techniques." United States v. Wilson, 314 F. App'x 239, 243 (11th Cir. 2009) (per curiam) (citation omitted). "This statute requires that wiretap applications include a 'full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous.'" United States v. Collins, 300 F. App'x 663, 666 (11th Cir. 2008) (quoting 18 U.S.C. § 2518(1)(c)); see also Wilson, 314 F. App'x at 243.

"The purpose of this statute is to ensure that wiretapping is not resorted to in situations in which traditional investigative techniques would suffice to expose the crime." [5] Collins, 300 F. App'x at 666. "The affidavit need not show a comprehensive exhaustion of all possible techniques, but must simply explain the retroactive or prospective failure of several investigative techniques that reasonably suggest themselves.'" Id. (quoting United States v. Van Horn, 789 F.2d 1492, 1496 (11th Cir. 1987)); see also United States v. Pacheco, 489 F.2d 554, 565 (5th Cir. 1974) ("[T]he purpose of the [necessity] requirement in section 2518(1)(c) is not to foreclose electronic surveillance until every other imaginable method of investigation has been unsuccessfully attempted, but simply to inform the issuing judge of the difficulties involved in the use of conventional techniques.").

"The district court is entitled to broad discretion in analyzing the necessity issue, and the government's showing on necessity must be read in a practical and commonsense fashion." United States v. Newsome, No. CR 108-062, 2008 WL 4820257, at *3 (S.D. Ga. Nov. 4, 2008) (internal marks and citation omitted). "Congress' purpose in conditioning wiretaps upon a showing of necessity was

---

[5] "Traditional investigative techniques include: physical surveillance, cooperating witnesses, informants, controlled drug purchases, pen registers and trap and trace devices." Collins, 300 F. App'x at 666 n.2.

11

narrow." United States v. Hammond, No. 2:10-cr-0007-JMS-CMM, 2011 WL 201497, at *5 (S.D. Ind. Jan. 18, 2011). "Congress wanted to ensure not that wiretaps are used only as a last resort in an investigation, but that they were not to be routinely employed as the initial step in criminal investigation." Id. (internal marks and citation omitted). Therefore, "the necessity hurdle is not great." Id. (internal marks and citations omitted).

The defendant fails to point to which Gazerro Affidavit fails to meet the necessity element. The Court agrees with the Government's contention that defendant has merely alleged in conclusory fashion, without citing any law from the Eleventh Circuit, that the Affidavits in support of the Applications lack specificity and contain only generalized statements true of any drug case. Upon review of the Gazerro Affidavits, the Court finds the necessity element satisfied.

For example, in Case 4:21-MJ-29, the Affidavit describes the traditional investigative techniques that had been used, and used successfully to some extent, to investigate the drug trafficking organization. These included confidential sources, undercover agents, physical and electronic surveillance, pole cameras, search warrants, pen registers, trash pulls, interviews, and a financial investigation. (See WIRE-21 MJ29-000069-98.) These methods obtained some evidence, such as the seizure of a significant quantity of drugs from Foster in California, but did

not allow agents to meet the goals of the investigation. (Id. at 85-86.) Agents knew that Foster and Miller moved drugs, but they did not know the full scope of the conspiracy, how the drugs were transported, or how the money from the sale of the drugs was laundered. (Id.) Despite the efforts of agents and the information provided by the confidential sources as detailed in the Gazerro Affidavit, agents did not know the scope of Miller's organization, how the methamphetamine, heroin, and fentanyl moved to the Northern District of Georgia, or the roles of each member of the conspiracy. (Id. at 29-30.) In dealing with a drug conspiracy, it is important for agents to understand the roles that each member of the conspiracy plays. Here, "[w]ithout the use of electronic surveillance, law enforcement would have been unable to ascertain the relationships between the defendants and their roles within the conspiracy." United States v. Hyppolite, 609 F. App'x 597, 607 (11th Cir. 2015) (per curiam).

Given the information provided in the Gazerro Affidavits, the issuing District Judges could reasonably conclude that traditional investigative techniques could not, by themselves, further the goals of the investigation. "'This circuit has repeatedly held that, where conventional techniques will not show the entire scope of the conspiracy, a wiretap is permissible, even in those situations where conventional techniques will allow for the arrest and conviction of some members.'"

United States v. Booker, No. 1:11-CR-255-TWT-RGV, 2013 WL 2468694, at *14 (N.D. Ga. Jan. 13, 2013) (footnote omitted) (quoting United States v. Kelley, Crim. No. 08-00327-CG, 2009 WL 2589086, at *2 (S.D. Ala. Aug. 17, 2009)), R. & R. adopted 2013 WL 2468694 at *1 (N.D. Ga. June 7, 2013).  In other words, absolute exhaustion of traditional investigative methods is unnecessary before seeking the use of electronic surveillance.  See United States v. Van Horn, 789 F.2d 1492, 1496 (11th Cir. 1986) ("The affidavit need not, however, show a comprehensive exhaustion of all possible techniques, but must simply explain the retroactive or prospective failure of several investigative techniques that reasonably suggest themselves.").  In sum, the necessity requirement was met here.[6]

### 3. Claimed Faulty Extension Applications

In his final contention, the defendant shows that where an application is for the extension of an order, the affiant must submit the court a statement describing the results obtained so far from the interception or provide an explanation for the

---

[6] Even if necessity was lacking in any of the Gazerro Affidavits supporting all three Applications here, Leon's good-faith exception to the exclusionary rule applies.  See Montemayor, 2018 WL 4517634, at *17; Sol Rey, 2008 WL 11384014, at *6.

failure to obtain any results. (Def.'s Mot. [197] 9, citing 18 U.S.C. § 2518(1)(f).)[7] He argues that the two orders obtained on September 14, 2021 (4:21-MJ-40) and March 15, 2022 (4:22-MJ-19) are deficient because they fail to provide the information required by Section 2518(1)(f).

However, as the Government points out, the law cited by the defendant is inapposite, as those two applications did not seek the extension of an order. Because Miller repeatedly dropped phones and changed his number, agents sought interceptions of multiple different phones. (WIRE-21 MJ40-000057; WIRE-22 MJ19-000059.) Each of these applications stand alone, and neither sought extensions of prior wiretaps orders. There has been no violation of Section 2518(1)(f). Accordingly, defendant's law and argument do not apply to this case.

---

[7] 18 U.S.C. § 2518(1)(f) provides as follows: "[W]here the application is for the extension of an order, a statement setting forth the results thus far obtained from the interception, or a reasonable explanation of the failure to obtain such results."

### III.  CONCLUSION

For the reasons explained above, the undersigned **RECOMMENDS** that Defendant Bryan White's Motion to Suppress Wire and Electronic Communications Evidence [197] be **DENIED**.

**SO RECOMMENDED**, this 25th day of August, 2023.

_____
WALTER E. JOHNSON
UNITED STATES MAGISTRATE JUDGE