# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ROME DIVISION

UNITED STATES OF AMERICA,

v.

BRYAN WHITE,

      Defendant.

CRIMINAL ACTION FILE
NO. 4:22-CR-0017-WMR

## <u>ORDER</u>

This matter is before the Court on the Magistrate Judge's Non-Final Report and Recommendation ("R&R") [Doc. 232], which recommends that Defendant Bryan White's Motion to Suppress Statements [Doc. 189], Motion to Suppress Pole Camera Surveillance [Doc. 191], and Motion to Suppress Evidence from any Warrantless Search of Defendant's Residence or Other Property, Including Cell Phone [Doc. 196], be denied. Also before the Court are Defendant's Objections to the R&R [Doc. 242]. Having considered the parties' evidence and having reviewed de novo the portions of the R&R objected to and the remainder for clear error, the Court Orders as follows.

As it relates to Defendant's Motion to Suppress Pole Camera Surveillance [Doc. 191], the Court agrees with the Magistrate Judge's findings as to the Cartersville Pole Camera. Accordingly, Defendant's Motion is **DENIED** as to the

1

Cartersville Pole Camera. Defendant's Motion to Suppress Pole Camera Surveillance as to the Atlantic Station Pole Camera is **DENIED** as moot. For the reasons set forth below, Defendant's Motion to Suppress Statements [Doc. 189] is **DENIED**, and Defendant's Motion to Suppress Evidence from any Warrantless Search of Defendant's Residence or Other Property, Including Cell Phone [Doc. 196] is **DENIED**.

## I.    Background

The factual allegations and procedural history of this case are set forth in the R&R and are incorporated by reference as if set forth fully herein.  For clarity and for ease of reference, the Court will summarize the most pertinent points below.

Defendant is charged with conspiring to possess with intent to distribute methamphetamine and fentanyl in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A). [Doc. 15-1 at 2]. The Government seeks to use against Defendant evidence obtained from several sources, and Defendant has moved to suppress evidence from those sources.

First, Defendant argues that the statements he made to law enforcement in connection with his post-arrest questioning were not knowingly, voluntarily, and intelligently given and should thus be suppressed. [Doc. 189; Doc. 217 at 6–8]. Defendant has also moved to suppress footage from two pole cameras: one placed by the F.B.I. in the cul-de-sac outside of co-Defendant Frank Miller's residence (the

"Cartersville Pole Camera"), and the other placed by Homeland Security Investigations in the hallway of an apartment complex where agents suspected a stash house for narcotics and money was located (the "Atlantic Station Pole Camera"). [Doc. 191; Doc. 217 at 8–14]. Defendant argues that the pole cameras were used in an invasive and continuous manner such that their use constituted an unreasonable seizure under the Fourth Amendment. [Doc. 217 at 8–14]. Finally, Defendant has moved to suppress all evidence—namely, his cell phone—which was seized from his home contemporaneously with his arrest. [Doc. 196; Doc. 217 at 14–26]. Defendant argues that evidence from his phone should be suppressed because officers did not have a search warrant for his home when they arrested him there and seized his phone. [Doc. 217 at 14–17]. Additionally, Defendant argues that the warrant that officers later obtained to search his phone was defective on several grounds, including that there was an unreasonable delay in obtaining and executing the warrant. [*Id.* at 17–26].

After reviewing Defendant's arguments, the Magistrate Judge rejected each of them and recommended that Defendant's Motions be denied. [Doc. 232]. Defendant responded by filing objections to the Magistrate Judge's findings. [Doc. 242]. On November 8, 2023, the Court held a hearing in which it heard the parties' arguments and accepted evidence on the presently pending Motions (the "Hearing"). Most relevant for purposes of this Order is the evidence that the Court heard relating

to the delay that occurred in obtaining and executing the warrant to search Defendant's phone. The Court heard testimony from Bennie Bryant, a Special Agent with the Department of Homeland Security and the affiant for the probable cause affidavit supporting the search warrant for Defendant's phone ("SA Bryant"). SA Bryant described in detail the reasons for the 33-day delay in obtaining the warrant and the delay that occurred in accessing Defendant's phone after the warrant was issued.

SA Bryant testified that on May 26, 2022, the day that officers arrested Defendant and seized his phone, they were simultaneously executing an arrest warrant for another one of the eight co-Defendants in this case. He also testified that officers had to execute three additional arrest warrants in the days following May 26, but officers encountered difficulties getting some of the other co-Defendants into custody. When asked how long it takes to execute an arrest warrant in a case like this, SA Bryant described the process as an "all-day event," and he explained that officers were busy effectuating the arrests of the other co-Defendants in late May. SA Bryant further testified that he did not work weekends during the period in question.

On June 2, SA Bryant's vehicle broke down, and he was occupied getting it fixed that day and on June 3. In the following days, SA Bryant testified that he worked on other cases on which he was assigned, he had at least two proffer

4

meetings, and he conducted discovery in Defendant's case. At some point during this time, SA Bryant was assigned the task of drafting the probable cause affidavit to search Defendant's phone. Although he worked closely with three other agents, SA Bryant explained that he was assigned to draft the affidavit because the other agents were busy, and the FBI had a backlog of cases that would result in further delays if an FBI agent had been tasked with writing the affidavit. SA Bryant ultimately received Defendant's phone on June 15, and he submitted a draft of his affidavit to Assistant United States Attorney Calvin Leipold on June 16. [Doc. 296 at 2–3].

Because he was busy, Mr. Leipold asked Special Assistant United States Attorney Rachel Lyons to review SA Bryant's affidavit on June 16. [*Id.* at 2]. Ms. Lyons revised the affidavit and returned it to SA Bryant the evening of June 22. [*Id.* at 4]. Ms. Lyons then submitted the affidavit and warrant application on June 24, and the warrant was issued on June 28. [*Id.* at 5–6]. The warrant had an expiration date of July 12. [Doc. 196-2 at 1]. SA Bryant began the process of extracting the phone's data on July 7, but he discovered that it had a passcode that prevented him from accessing its contents. [Doc. 217-2 at 2]. After unsuccessfully attempting to access the phone using technology that was available to him, SA Bryant testified that he sent the phone to the Homeland Security Investigation's Forensic Laboratory, which accessed the phone's contents on August 23. [Doc. 217-1 at 5].

With this background and evidence in mind, the Court proceeds to consider Defendant's objections to the R&R.

## II. Legal Standard

In reviewing an R&R, this Court makes a "de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). "Parties filing objections to a magistrate's report and recommendation must specifically identify those findings objected to. Frivolous, conclusive, or general objections need not be considered by the district court." *United States v. Schultz*, 565 F.3d 1353, 1361 (11th Cir. 2009) (citations omitted). If no specific objections are made or no objections are made at all, "the appropriate standard of review for the report and recommendation is clear error." *Lattimore v. Bank of Am.*, N.A., 2014 WL 11456272, at *1 (N.D. Ga. Feb. 10, 2014), *aff'd sub nom. Lattimore v. Bank of Am. Home Loans*, 591 F. App'x 693 (11th Cir. 2015). As Defendant has filed timely objections to the R&R in this case, the Court reviews the challenged portions of the R&R de novo and the remainder of the R&R for clear error.

### III. Discussion

A. <u>The Statements that Defendant Made Contemporaneously with His Arrest Were Knowing and Voluntary.</u>

Defendant first objects to the Magistrate Judge's finding that Defendant's statements to officers after he had been *Mirandized* were knowing and voluntary. [Doc. 242 at 1–2]. Defendant specifically objects to the Magistrate's finding that "there was not an overwhelming show of force here which intimidated the defendant into agreeing to an interview." [*Id.*] (quoting [Doc. 232 at 14]). In support of his argument, Defendant cites the presence of his wife, children, and 15-20 armed officers at the scene of his arrest, as well as one officer's comment that Defendant "had to talk" when he was reluctant in answering questions about his drug use and purchases. [*Id.*].

The Supreme Court held in *Miranda v. Arizona* that the Government "may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." *Miranda*, 384 U.S. 436, 444 (1966). Once the Government informs an accused of his rights under *Miranda*, "a defendant who wishes to invoke his right to remain silent must do so 'unambiguously' and 'unequivocally.'" *Owen v. Fla. Dep't of Corr.*, 686 F.3d 1181, 1192 (11th Cir. 2012) (quoting *Davis v. U.S.*, 512 U.S. 452, 458–62 (1994)). However, even if law enforcement officials complied with the procedural safeguards

7

mandated by *Miranda*, "the court must still rule on the confession's voluntariness." *Jarrell v. Balkcom*, 735 F.2d 1242, 1252 (11th Cir. 1984).[1]  "The burden is on the prosecution to establish, by a preponderance of the evidence, that a challenged confession was voluntary." *U.S. v. Lall*, 607 F.3d 1277, 1285 (11th Cir. 2010) (citing *Lego v. Twomey*, 404 U.S. 477, 489 (1972)).

A confession is voluntary if, under the totality of the circumstances, it was "the product of the defendant's free and rational choice. This means that the confession must not be extracted by any sort of threats or violence, or obtained by any direct or implied promises, or by the exertion of any improper influence." *Harris v. Dugger*, 874 F.2d 756, 761 (11th Cir. 1989) (internal citations omitted). The Eleventh Circuit has also contrasted a suspect's confession that is the product of his free and deliberate choice with confessions obtained by "intimidation, coercion or deception." *U.S. v. Thompson*, 422 F.3d 1285, 1295 (11th Cir. 2005). "Sufficiently coercive conduct normally involves subjecting the accused to an exhaustingly long interrogation, the application of physical force or the threat to do so, or the making of a promise that induces a confession." *Id.* at 1295–96 (quoting *U.S. v. Mendoza-Cecelia*, 963 F.2d 1467, 1475 (11th Cir. 1992)). Moreover, deception in the form of

---

[1] Compliance with *Miranda* and voluntariness are separate issues. Thus, "the court [first] considers whether the government has complied with the *Miranda* requirements. Upon finding compliance with *Miranda*, the court then rules on the confession's voluntariness." *U.S. v. Sims*, 719 F.2d 375, 378 (11th Cir. 1983).

misrepresented facts is "not enough to render a suspect's ensuing confession involuntary," but misrepresentations of law "are much more likely to render a suspect's confession involuntary." *U.S. v. Lall*, 607 F.3d 1277, 1285 (11th Cir. 2010).

In this case, there is no dispute that officers complied with *Miranda*'s required procedural safeguards by reading Defendant his *Miranda* rights and having him sign a written *Miranda* waiver. [Doc. 217 at 3; Doc. 224 at 3]. Moreover, Defendant did not unambiguously and unequivocally invoke his right to remain silent. While Defendant did indicate that he did not want to answer several of the officers' questions, [Govt. Exh. 1 at 20:50, 23:25], the "refusal to answer certain questions is not tantamount to the invocation, either equivocal or unequivocal, of the constitutional right to remain silent." *U.S. v. Mikell*, 102 F.3d 470, 477 (11th Cir. 1996). Defendant also resumed answering other questions after he indicated that he did not want to answer certain questions, which is inconsistent with an unequivocal invocation of the right to remain silent. In such circumstances, "officers [had] no obligation to stop questioning him." *Davis v. U.S.*, 512 U.S. 452, 462 (1994). Thus, the Government fully complied with *Miranda*'s mandates.

Nor were Defendant's confessions the product of intimidation, coercion, or deception as to render them involuntary under the totality of the circumstances. Defendant relies on the fact that he was arrested in the presence of his wife, children,

onlooking neighbors, and 15-20 armed officers, which he claims gave him "no real choice other than to want to be inside with officers." [Doc. 242 at 1–2]. However, even assuming that Defendant had no meaningful choice other than to go inside the house with the three interviewing officers, Defendant was under no obligation to answer any of their questions once inside. Crucially, Defendant understood as much as evidenced by the fact that he refused to answer certain questions that officers asked. [Govt. Exh. 1 at 20:50, 23:25].

Moreover, the Court finds that when placed in context, the officer's comment that Defendant "had to talk" did not constitute coercion or deception that rendered his confessions involuntary.[2] As discussed, Defendant clearly felt comfortable refusing to answer officers' questions. Additionally, the greater context in which the officer spoke indicates that Defendant's statements thereafter were not involuntary. Defendant had already waived his *Miranda* rights and had begun answering questions and divulging information about himself and his relationship with Defendant Miller before the officer told him that he had to talk. [Govt. Exh. 1 at 4:00–5:45]. And immediately after the officer's comment, Defendant asked if he was going to jail "no matter what," as though he wanted to clarify whether he could

---

[2] The Court acknowledges that this is a close issue. As discussed at the Hearing, the Court anticipates that this issue is ripe for a post-conviction challenge should the Government use evidence obtained from Defendant's interview after the officer told him that he had to talk. As a matter of trial strategy, the Government may be better suited if it does not rely on such evidence.

talk his way out of going to jail that day. [*Id.* at 6:15]. Officers were forthcoming in telling Defendant that he was going to jail no matter what; thus, Defendant could not have felt coerced into talking to save himself from going to jail. Considering the totality of the circumstances, the Court finds that the Government has met its burden in proving that Defendant's statements were voluntary. For these reasons, Defendant's Motion to Suppress Statements is denied.

B. Defendant Does Not Have Standing to Challenge Evidence Captured by the Cartersville Pole Camera, and the Motion to Suppress Evidence from the Atlantic Station Pole Camera is Denied as Moot.

Defendant has moved to suppress evidence from both the Cartersville and Atlantic Station Pole Cameras. [Doc. 191]. The Magistrate Judge found that Defendant lacked standing to challenge evidence obtained from both cameras. [Doc. 232 at 20–22]. Defendant did not object to the Magistrate Judge's finding that he lacked standing to challenge evidence obtained from the Cartersville Pole Camera, and after reviewing the Magistrate's finding on this point for clear error, the Court finds none. Accordingly, the Court adopts the Magistrate Judge's finding as the opinion of this Court, and Defendant's Motion to Suppress evidence from the Cartersville Pole Camera is denied.

Defendant does, however, object to the Magistrate Judge's finding that he does not have Fourth Amendment standing to challenge the Atlantic Station Pole

Camera. Nevertheless, the Government represented at the Hearing that it will not offer evidence obtained from the Atlantic Station Pole Camera at trial. The Court relies on the Government's representation; accordingly, Defendant's Motion to Suppress evidence from the Atlantic Station Pole Camera is denied as moot.

    C.   <u>Officers Were Justified in Seizing Defendant's Cellphone Pursuant to the Plain View Doctrine.</u>

Defendant next objects to the Magistrate Judge's finding that officers were justified in seizing Defendant's cellphone under the plain view doctrine. [Doc. 242 at 8]. Defendant first suggests, but does not explicitly claim, that there was insufficient evidence to prove that his cellphone was in plain view to officers because officers made no contemporaneous records of why and from where they were seizing the phone, and there are no photographs showing that the cellphone was located in plain view before it was seized. [*Id.* at 8–9]. Additionally, Defendant claims that because he was using a different phone number when he was arrested than the one he used when he was intercepted on the wiretap, officers lacked probable cause to believe that the phone seized was "connected to the investigation at hand or that it would contain evidence of a crime." [*Id.*]. Finally, Defendant objects to the Magistrate Judge's holding that Defendant could not rely on *U.S. v. Mejia-Velazquez* to raise a new argument in his Reply Brief, [Doc. 231]. [Doc. 242 at 9; 2023 WL 120621 (N.D. Ga. Jan. 6, 2023). Defendant reasons that he was responding to the

Government's arguments in citing *Mejia-Velazquez* rather than raising a new argument and that, his reliance on the case in his Reply Brief is valid [*Id.*].

The Fourth Amendment protects individuals from unreasonable seizures. U.S. Const. Amend. IV. A Fourth Amendment seizure occurs "when there is some meaningful interference with an individual's possessory interests" in his property. *U.S. v. Jacobsen*, 466 U.S. 109, 113 (1984). A seizure is presumptively unreasonable if it occurs "inside a home without a warrant." *Payton v. New York*, 445 U.S. 573, 586 (1980). When a warrantless seizure occurs, the burden is on the Government to prove that the seizure was reasonable. *U.S. v. Freire*, 710 F.2d 1515, 1519 (11th Cir. 1983). The Government's burden requires it to "demonstrate that the challenged action falls within one of the recognized exceptions to the warrant requirement, thereby rendering it reasonable within the meaning of the [F]ourth [A]mendment." *Id.*

One recognized exception to the warrant requirement is the plain view doctrine, which "permits a warrantless seizure where (1) an officer is lawfully located in the place from which the seized object could be plainly viewed and must have a lawful right of access to the object itself; and (2) the incriminating character of the item is immediately apparent." *U.S. v. Smith*, 459 F.3d 1276, 1290 (11th Cir. 2006). The requirement that the incriminating character of the item be immediately apparent requires officers to have probable cause that the item in question is

contraband or evidence of a crime. *Id.*; *see also Texas v. Brown*, 460 U.S. 730, 741 (1983). Probable cause in this context requires that "the facts available to the officer would 'warrant a man of reasonable caution in the belief' that certain items may be . . . useful as evidence of a crime." *Brown*, 460 U.S. at 742 (internal citations omitted). In other words, the Government need not make a "showing that such a belief [is] correct or more likely true than false." *Id.* Instead, "[a] 'practical, nontechnical' probability that incriminating evidence is involved is all that is required." *Id.* (quoting *Brinegar v. U.S.*, 338 U.S. 160, 176 (1949)).

The Court first rejects Defendant's suggestion that there was insufficient evidence that his cellphone was in plain view to officers on a coffee table when it was seized. [Doc. 242 at 8–9]. Agent Gazerro, who seized the cellphone, testified that he saw the cellphone in plain view on a coffee table after Defendant elected to be interviewed inside his home. [Doc. 216 at 10, 15–16]. No evidence has been introduced that contradicts Agent Gazerro's testimony. Nor does the absence of a report detailing the location of the cellphone or the absence of the cellphone in the video of Defendant's interview constitute evidence to the contrary. Indeed, the video of Defendant's post-arrest interview does not portray a coffee table at all, so it certainly does not constitute evidence that Defendant's cellphone was *not* on the coffee table that Agent Gazerro claims. *See* [Govt. Exh. 1].

The Court also finds that Agent Gazerro had probable cause to seize the cellphone. The fact that Defendant had changed phone numbers and/or devices since he was intercepted on the wiretap does not change the analysis. Agent Gazerro testified that he knew that data could remain on a cellphone even if the device's number changed and that data from a previous device could be downloaded onto a new device. [Doc. 216 at 17]. This knowledge, along with knowledge acquired through wiretap interceptions that Defendant used his cellphone to discuss drug trafficking, was sufficient to "'warrant a man of reasonable caution in the belief' that certain items may be . . . useful as evidence of a crime." [*Id.* at 16]; *Brown*, 460 U.S. at 742 (internal citations omitted).

Finally, assuming that Defendant did not raise a new argument in his Reply Brief, the Court nevertheless finds the facts from Judge Grimberg's decision in *U.S. v. Mejia-Velazquez* inapposite for purposes of the present case. 2023 WL 120621 (N.D. Ga. Jan. 6, 2023). To begin, when questions of federal law are at issue, this Court is bound only by the decisions of the Eleventh Circuit and the Supreme Court. And, while this Court's previous opinions and orders are often persuasive, that is not the case when the facts are readily distinguishable as they are in *Mejia-Velazquez*.

In that case, an officer discovered two cellphones while he was exceeding the scope of a "safety sweep." *Id.* at *6. In other words, the officer was not "lawfully located in the place from which the seized object could be plainly viewed" as

15

required by the plain view doctrine. *U.S. v. Smith*, 459 F.3d 1276, 1290 (11th Cir. 2006). Moreover, the officer in *Mejia-Velazquez* called the number of one of the cellphones to confirm his suspicion that it was the target telephone of a warrant before seizing the cellphone. *Id.* at *2. This led Judge Grimberg to conclude that the officer did not have probable cause to believe that the incriminating nature of the cellphone was readily apparent. *Id.* at *8. These facts bear little resemblance to the facts of the instant case, in which Agent Gazerro had lawful access to Defendant's cellphone and immediately recognized that Defendant's singular cellphone was likely to contain evidence of drug trafficking. Because of these disparate facts, the Court finds that the analysis in *Mejia-Velazquez* is inapplicable to this case.

D. The 33-Day Delay in Applying for a Warrant was Not Unreasonable.

Defendant next objects to the Magistrate Judge's finding that officers' 33-day delay in applying for a warrant to search Defendant's cellphone was reasonable. [Doc. 242 at 11–12]. In his objections, which were filed before the Hearing when the Court heard SA Bryant's testimony, Defendant specifically objected to the finding that officers' delay in obtaining a warrant can be justified by reference to the "nature and complexity of the investigation" when no officers had previously testified or provided evidence to explain the delay. [*Id.* at 11] (quoting [Doc. 232 at 32]). Defendant also objected to the Magistrate Judge's finding that the delay was

reasonable given that there was no evidence of officers' diligence and no testimony indicating that the delay was reasonable. [Doc. 242 at 11–12].

A seizure that is initially proper may nevertheless become unlawful if "its manner of execution unreasonably infringes possessory interests protected by the Fourth Amendment." *U.S. v. Jacobsen*, 466 U.S. 109, 124 (1984). One way that a seizure may become unlawful is "if the police act with unreasonable delay in securing a warrant." *U.S. v. Mitchell*, 565 F.3d 1347, 1350 (11th Cir. 2009) (quoting *U.S. v. Martin*, 157 F.3d 46, 54 (2d Cir. 1998)). A seizure supported by probable cause is valid, on the other hand, if "the police diligently obtained a warrant in a reasonable period of time." *Illinois v. McArthur*, 531 U.S. 326, 334 (2001). "The reasonableness of the delay is determined 'in light of all the facts and circumstances,' and 'on a case-by-case basis.'" *Mitchell*, 565 F.3d at 1351 (quoting *U.S. v. Mayomi*, 873 F.2d 1049, 1054 n.6 (7th Cir. 1989)).

In *U.S. v. Laist*, the Eleventh Circuit discussed several factors that the Court considers "highly relevant" to the reasonableness inquiry: "first, the significance of the interference with the person's possessory interest; second, the duration of the delay; third, whether or not the person consented to the seizure; and fourth, the government's legitimate interest in holding the property as evidence." 702 F.3d 608, 613–14 (11th Cir. 2012) (internal citations omitted). The Court also discussed the importance of considering "whether police diligently pursued their investigation."

*Id.* at 614 (quoting *U.S. v. Place*, 462 U.S. 696, 709 (1983)). The diligence inquiry, in turn, requires district courts to consider "the nature and complexity of the investigation and whether 'overriding circumstances arose, necessitating the diversion of law enforcement personnel to another case;' the quality of the warrant application and the amount of time we expect such a warrant would take to prepare; and any other evidence proving or disproving law enforcement's diligence in obtaining the warrant." *Laist*, 702 F.3d at 614 (internal citations omitted).

Considering SA Bryant's testimony and applying these factors to the instant case, the Court finds that the delay in obtaining a warrant to search Defendant's phone was reasonable. While the interference with Defendant's possessory interest in his property was certainly significant, there is no evidence that officers lacked diligence as is customary in cases where the Eleventh Circuit has held that delays were unreasonable. *See, e.g.*, *U.S. v. Mitchell*, 565 F.3d 1347, 1351 (11th Cir. 2009) (holding that a delay in obtaining a search warrant was unreasonable when an agent testified that he "didn't see any urgency" in obtaining a warrant while he was out of town for two weeks).

Here, SA Bryant presented detailed testimony describing the reasons for the delay, and the Court finds no evidence that he or his colleagues lacked diligence or failed to act with urgency in procuring the warrant. To the contrary, the evidence shows that SA Bryant actively sought to obtain a warrant, but circumstances outside

18

of his control contributed to the delay in this case. For example, SA Bryant had to devote considerable time effectuating the arrests of the seven other co-Defendants in this case and working on other cases, and he spent the better part of two days dealing with vehicle issues. Additionally, four days of the delay cannot be attributed to SA Bryant or his colleagues, as the affidavit and warrant application were submitted on June 24, but the warrant was not issued until June 28. *See U.S. v. Laist*, 702 F.3d 608, 615 (11th Cir. 2012) (refusing to apply the exclusionary rule, in part, because its deterrence rationale would not be served after the Government submitted the affidavit and warrant application). Also important is the fact that Defendant did not ask for his phone to be returned while officers sought a warrant to search it. *See Thomas v. U.S.*, 775 F. App'x 477, 490 (11th Cir. 2019) (discussing that the defendant did not request the return of his property in holding that a delay was reasonable and citing other cases holding the same). For these reasons, the Court finds that the delay attributable to officers in obtaining a warrant to search Defendant's phone was not unreasonable under the Fourth Amendment.

E. <u>The Search Warrant for Defendant's Phone was Supported by Sufficient Probable Cause.</u>

Defendant next objects to the Magistrate Judge's finding that the search warrant for Defendant's phone was based on sufficient probable cause. [Doc. 242 at 12]. Defendant contends that, because he had changed phone numbers after he was

19

intercepted on wiretaps, "[o]fficers had no evidence to support their hunch that the current phone would have evidence related to criminal activity on it." [*Id.*].

Probable cause exists "when under the totality-of-the-circumstances there is a fair probability that contraband or evidence of a crime will be found in a particular place." *U.S. v. Franklin*, 694 F.3d 1, 7 (11th Cir. 2012) (quoting *U.S. v. Tobin*, 923 F.2d 1506, 1510 (11th Cir. 1991)). Having reviewed SA Bryant's lengthy affidavit, the Court agrees with the Magistrate Judge that it easily satisfies this standard. As explained above, the fact that Defendant had changed phone numbers and/or devices does not change this analysis because data can remain on a cellphone even if the device's number changes, and data from a previous device can be downloaded onto a new device. SA Bryant's affidavit describes drug trafficking related conversations that Defendant had with co-Defendant Miller over the phone. [Doc. 196-1 at 10–13]. Paired with SA Bryant's knowledge that drug traffickers "often use . . . cellular telephones . . . to maintain contact with and receive messages from their customers and suppliers and to further drug distribution activity," the warrant was supported by sufficient probable cause. [*Id.* at 8].

F. <u>Even if the Warrant Lacked Probable Cause, *Leon*'s Good Faith Exception Applies.</u>[3]

Defendant next objects to the Magistrate Judge's finding that, even if the warrant to search Defendant's phone was not supported by probable cause, *Leon*'s good faith exception to the exclusionary rule applies. [Doc. 242 at 13–14]. Defendant specifically contends that SA Bryant included knowingly false and misleading information in the probable cause affidavit, and that officers therefore should not be allowed to rely on the good faith exception. [*Id.*].[4] Defendant also argues that officers cannot rely on the good faith exception because the warrant was lacking indicia of probable cause and was so facially deficient that the executing officers could not have reasonably relied on it. [*Id.*].

The Supreme Court's decision in *United States v. Leon* "stands for the principle that courts generally should not render inadmissible evidence obtained by police officers acting in reasonable reliance upon a search warrant that is ultimately found to be unsupported by probable cause." *U.S. v. Martin*, 297 F.3d 1308, 1313

---

[3] Because the Court finds that the search warrant for Defendant's phone was valid in all respects, the Court need not rely on *Leon*'s good faith exception to deny Defendant's Motion to Suppress. [Doc. 196].

[4] Defendant does not identify in his objections what purportedly false information SA Bryant swore to. *See* [Doc. 242 at 13–14]. However, Defendant argued before the Magistrate Judge that SA Bryant misled the Court by (1) failing to explain that Defendant never went to Rockmart, Georgia to retrieve drugs; and (2) stating in an attachment to the affidavit that Defendant's phone had been seized pursuant to a search warrant. [Doc. 217 at 21–23].

(11th Cir. 2002) (citing *Leon*, 468 U.S. 897, 922 (1984)). *Leon*'s so-called good faith

exception does not apply in four circumstances:

> (1) where the magistrate or judge in issuing a warrant was misled by
> information in an affidavit that the affiant knew was false or would have
> known was false except for his reckless disregard of the truth; (2) where
> the issuing magistrate wholly abandoned his judicial role . . . ; (3) where
> the affidavit supporting the warrant is so lacking in indicia of probable
> cause as to render official belief in its existence entirely unreasonable;
> and (4) where, depending upon the circumstances of the particular case,
> a warrant is so facially deficient—i.e., in failing to particularize the
> place to be searched or the things to be seized—that the executing
> officers cannot reasonably presume it to be valid.

*Martin*, 297 F.3d at 1313 (citations omitted).

None of these circumstances is present in this case. As the Court discussed

above, the warrant was supported by sufficient probable cause, so Defendant's

objection that officers could not rely on it because it lacked indicia of probable cause

is overruled. Moreover, Defendant generally objects that the warrant was facially

deficient without explaining why he believes that. *United States v. Schultz*, 565 F.3d

1353, 1361 (11th Cir. 2009) (citations omitted) ("[G]eneral objections need not be

considered by the district court."). The Court finds that the warrant here identified

with particularity the place to be searched and the things to be seized. Therefore, the

Court overrules Defendant's objection that the warrant was facially deficient in any

manner.

Finally, there is no indication that SA Bryant included any false statements knowingly or with reckless disregard for the truth. To begin, SA Bryant's purported failure to inform the Magistrate Judge that Defendant did not actually go to Rockmart, Georgia, to retrieve drugs was not misleading. SA Bryant's affidavit simply says that agents "intercepted an incoming wire communication between Miller and White, pertaining to White retrieving drugs from Rockmart Ga." [Doc. 196 at 10]. Whether or not Defendant actually did retrieve any drugs does not change whether statements "pertain[ed] to White retrieving drugs."[5] Additionally, the Court heard testimony from SA Bryant at the Hearing that he originally believed that Defendant's phone was seized pursuant to a warrant. Although it is unclear exactly when SA Bryant discovered that the phone was instead seized in plain view, even if he made this discovery before drafting the affidavit, the failure to draft the affidavit accordingly would have been, at most, negligent.[6] For these reasons, *Leon*'s good faith exception applies.

---

[5] The Court also agrees with the Magistrate Judge that Defendant's willingness to pick up drugs—whether or not he actually did pick up drugs—is evidence of his involvement in a drug conspiracy, which is the crime that Defendant has been charged with. [Doc. 232 at 36].

[6] As the Magistrate Judge correctly noted, this fact relates only to the manner in which Defendant's phone was seized. [Doc. 232 at 36]. Whether or not Defendant's phone was seized pursuant to a warrant or pursuant to the plain view doctrine has no bearing on whether there was probable cause to believe that it contained evidence of a crime. Thus, it is difficult to see how the Magistrate Judge could have been "misled" by SA Bryant's representation in issuing the warrant, as is required to render *Leon*'s good faith exception inapplicable.

G. <u>There Was No Delay in Executing the Search Warrant for Defendant's Phone, and Suppression is Not Appropriate.</u>

Defendant next objects to the Magistrate Judge's finding that the delay in executing the warrant to search his phone was reasonable. [Doc. 242 at 14]. Defendant contends that there was evidence that officers intentionally and deliberately disregarded the deadline for executing the warrant because no one submitted a request to crack the phone's passcode until August 15, 2022, which was more than a month after the search warrant's July 12 deadline. [*Id.* at 14–15]. Moreover, Defendant argues that it is the Government's burden, not Defendant's, to show that law enforcement acted in a reasonable manner, which Defendant claims the Government has not done. [*Id.* at 15]. Defendant also objects to the Magistrate Judge's finding that he was not prejudiced by officers' failure to execute the warrant within the deadline because he did not immediately request the return of his phone. [*Id.*]. Defendant reasons that when he later requested his phone be returned, that request was denied, so any earlier request would have been futile as well. [*Id.* at 15–16]. Finally, Defendant claims that SA Bryant did not start the extraction process on July 7 as the Government claims, but instead, only figured out that the phone had a passcode on that date. [*Id.* at 14].

"The Fourth Amendment does not specify that search warrants contain expiration dates." *U.S. v. Gerber*, 994 F.2d 1556, 1559 (11th Cir. 1993). Instead,

Federal Rule of Criminal Procedure 41(e)(2)(A) requires search warrants to contain a 14-day deadline. The Eleventh Circuit has explained, however, that

> [u]nless a clear constitutional violation occurs, noncompliance with Rule 41 requires suppression of evidence only where (1) there was 'prejudice' in the sense that the search might not have occurred or would not have been so abrasive if the rule had been followed, or (2) there is evidence of intentional and deliberate disregard of a provision in the Rule.

*Gerber*, 994 F.2d at 1560 (quoting *U.S. v. Loyd*, 712 F.2d 331, 333 (11th Cir. 1983)). Contrary to Defendant's contention, the person seeking suppression of evidence seized during a search conducted pursuant to a warrant has the burden of establishing that the warrant was defective or executed improperly. *See U.S. v. Vigo*, 413 F.2d 691 (5th Cir. 1969).[7]

Before turning to Defendant's objections to the R&R, the Court first finds that the officers in this case timely complied with the warrant's 14-day deadline. Although the Court has not found any Eleventh Circuit cases that deal with this particular scenario, other circuit courts generally hold that a search of a password-protected phone complies with Rule 41(e)(2)(A) so long as officers either seize the phone or take steps to extract the phone's data within the 14-day period. *See, e.g., U.S. v. Carrington*, 700 F. App'x 224, 232 (4th Cir. 2017) (upholding a search of a

---

[7] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

phone when the FBI accessed the phone's contents five months after the search warrant expired); *U.S. v. Cleveland*, 907 F.3d 423, 431 (6th Cir. 2018) ( holding that a search warrant for a previously-seized phone was "executed" when the phone was removed from its location and shipped to an analytics laboratory); *U.S. v. Huart*, 735 F.3d 972, 974 n.2 (7th Cir. 2013) ("Law enforcement is permitted to decode or otherwise analyze data on a seized device at a later time."). In this case, SA Bryant testified at the Hearing that he attempted to access Defendant's phone on July 7, 2022, and he used a computer program to attempt to unlock Defendant's phone. The Court finds that SA Bryant's actions on July 7 were taken to extract the phone's contents and thus constituted an "execution" of the search warrant. Therefore, the search warrant was timely executed.

However, even if the search warrant had not been timely executed, suppression of the contents of Defendant's phone would not be appropriate. As the Magistrate Judge correctly noted, Defendant has not demonstrated that a constitutional violation occurred. [Doc. 232 at 39]. Moreover, Defendant has not explained how he was prejudiced by any delay that occurred in executing the warrant.[8] Finally, the Court does not find that officers intentionally or deliberately

---

[8] In his objections, Defendant discusses that any attempts he would have made to have his phone returned would have been futile. [Doc. 242 at 15–16]. However, in finding that Defendant did not allege prejudice, the Magistrate Judge did not discuss whether Defendant requested his phone. [Doc. 232 at 39–40]. The Magistrate Judge

disregarded the requirement that the search warrant be executed within 14 days. Instead, SA Bryant attempted to access the phone's contents within the warrant's 14-day deadline on July 7, but he was unable to do so. Thus, even if the warrant was not timely executed, suppression is inappropriate.

### H. The Search Warrant for Defendant's Phone Was Not Overly Broad.

Defendant's final contention is that the search warrant for his phone was overly broad. [Doc. 242 at 16–17].[9] Defendant argues that the search warrant provided for the wholesale copying of all the files on his phone, but that the warrant and the affidavit failed to show how all of those files were relevant to the investigation into Defendant or to any particular crime. [*Id.*]. Defendant also contends that *Leon*'s good faith exception to the exclusionary rule does not apply. [*Id.*].[10]

The Fourth Amendment requires warrants to "particularly describe[e] the place to be searched, and the persons or things to be seized." U.S. Const. Amend. IV. "A warrant which fails to sufficiently particularize the place to be searched or the things to be seized is unconstitutionally over broad," and general searches

---

simply found that Defendant "[did] not argue nor [had] he demonstrated that he ha[d] been prejudiced by the timing of the search." [*Id.* at 39]. The same still holds true.

[9] Defendant argued this issue in his Motion [Doc. 196], but the Magistrate Judge did not specifically address it in the R&R.

[10] For the reasons discussed *supra* in Subsection F, *Leon*'s good faith exception to the exclusionary rule applies to prevent suppression.

conducted pursuant to overly broad warrants are unconstitutional. *U.S. v. Travers*, 233 F.3d 1327, 1329 (11th Cir. 2000). The Eleventh Circuit has explained that "the particularity requirement must be applied with a practical margin of flexibility, depending on the type of property to be seized, and that a description of property will be acceptable if it is as specific as the circumstances and nature of activity under investigation permit." *U.S. v. Wuagneux*, 683 F.2d 1343, 1349 (11th Cir. 1982). Additionally, "[t]he scope of the warrant, and the search, is limited by the extent of probable cause," and "probable cause must exist to seize all items of a particular type described in the warrant." *U.S. v. Lebowitz*, 674 F. Supp. 2d 1336, 1351 (N.D. Ga. 2009) (quoting *In re Grand Jury Subpoenas Dated Dec. 10, 1987*, 926 F.2d 847, 865–57 (9th Cir. 1991)).

In this case, the Court finds that the warrant easily satisfies the particularity requirement. Attachment B to the warrant describes with specificity eleven different types of evidence that could be properly seized from the phone. [Doc. 196-2 at 4–5]. Thus, the warrant "enable[d] the searcher to reasonably ascertain and identify the things authorized to be seized." *Wuagneux*, 683 F.2d at 1348. Additionally, the Court finds that there was probable cause to seize each of the eleven different types of evidence that the warrant permitted to be seized. When SA Bryant drafted his probable cause affidavit, Defendant had been charged with conspiring to possess with intent to distribute methamphetamine and fentanyl in violation of 21 U.S.C. §§

846 and 841(b)(1)(A). [Doc. 15-1 at 1–2]. Moreover, Defendant's alleged co-conspirators had been charged with a range of related crimes, including money laundering and possession of a firearm in furtherance of a drug trafficking crime. *See* [Doc. 15-1]. SA Bryant's affidavit thoroughly explains how criminals who are engaged in drug trafficking and money laundering store evidence of their crimes in digital mediums and on cellular devices. [Doc. 196-1 at 6–8]. And, as explained *supra* in Subsection E, there was probable cause to believe that Defendant's phone contained such evidence. Thus, the warrant was not overly broad, and the affidavit sufficiently explained how the files permitted to be seized were relevant to the investigation into Defendant and to the particular crimes at issue.

## IV. Conclusion

For the foregoing reasons, Defendant's Motion to Suppress Statements [Doc. 189], Motion to Suppress Pole Camera Surveillance [Doc. 191], and Motion to Suppress Evidence from any Warrantless Search of Defendant's Residence or Other Property, Including Cell Phone [Doc. 196] are **DENIED**.

**IT SO ORDERED**, this 15th day of November, 2023.

WILLIAM M. RAY, II
UNITED STATES DISTRICT JUDGE